**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| THE HOLMES GROUP, INC., | : | |
| | : | Civil Action No. |
| Plaintiff/Counter-Defendant, | : | 05-CV-10504 (NMG) |
| | : | |
| v. | : | |
| | : | |
| EURO-PRO OPERATING, LLC, | : | |
| | : | |
| Defendant/Counter-Claimant. | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
AND/OR DISMISS DEFENDANT'S THIRD AND FOURTH AND FIFTH
<u>COUNTERCLAIMS AND SECOND AND THIRD AFFIRMATIVE DEFENSES</u>**

Plaintiff, The Holmes Group, Inc. (hereinafter "Holmes") submits this Memorandum in support of its Motion, pursuant to Fed. R. Civ. P. 9(b), 12(b) and 12(f), to strike and/or dismiss certain affirmative defenses and counterclaims of Defendant, Euro-Pro Operating, LLC (hereinafter "Euro-Pro"). The claims sought to be stricken and/or dismissed include unspecified allegations of inequitable conduct in the procurement of the patents-in-suit and conclusory allegations of patent misuse alleging intentional interference with existing and prospective contractual relations and unfair competition.

Euro-Pro filed the present First Amended Answer to First Amended Complaint and Counterclaims following several Local Rule 7.1 meetings in which Holmes specifically identified those allegations which were not properly plead and the basis therefor. Despite these detailed discussions, Euro-Pro has once again clearly failed to meet its burden for a proper pleading.

With respect to Euro-Pro's Third Counterclaim and Second Affirmative Defense, allegations of inequitable conduct are fraud-type averments that must satisfy Rule 9(b) and, therefore, must be plead with particularity or else be entirely stricken or dismissed.  Euro-Pro's fraud-type averments clearly lack the minimum level of particularity required to satisfy Rule 9(b).  Euro-Pro specifically chose not to identify what the alleged material prior art consisted of as required by controlling case law and discussed at length during the Local Rule 7.1 conferences.  Accordingly, Euro-Pro's Third Counterclaim based on the fraud-type averments should be stricken and/or dismissed pursuant to Rules 9(b), 12(b) and/or 12(f).

Euro-Pro's Fourth and Fifth Counterclaims and Third Affirmative Defense are all related to Holmes purported communications to unidentified third parties regarding the assertion of infringement of the patents-in-suit.  Euro-Pro has failed to allege sufficient facts that would entitle it to relief on the counterclaims as pleaded in view of Holmes' right to make such statements.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Moreover, any such alleged statements made by Holmes are protected by the First Amendment and the *Noerr-Pennington* doctrine.  Thus, Euro-Pro's Fourth and Fifth Counterclaims and Third Affirmative Defense should be stricken and/or dismissed pursuant to Rule 12(b) and/or 12(f).

## I.    <u>BACKGROUND</u>

Holmes brought this action against Euro-Pro for infringement of United States Patent Nos. 6,573,483 B1 (the '483 patent), 6,740,855 B1 (the '855 patent) and 6,872,921 B1 (the '921 patent), each entitled "Programmable Slow-Cooker Appliance" (collectively hereinafter the "patents-in-suit").  In Euro-Pro's Answer To First Amended Complaint and Counterclaims (a copy of which is attached hereto as Exhibit A), Euro-Pro alleged a counterclaim including fraud-type averments as well as a counterclaim and affirmative defense directed to patent misuse

related to a claim of intentional interference with business. Following several detailed Local Rule 7.1 teleconferences in which Holmes advised Euro-pro that the inequitable conduct and tortious interference with business counterclaims were insufficiently plead, Euro-Pro decided that it would amend its counterclaims prior to Holmes filing a motion to dismiss.

On May 27, 2005, Euro-Pro filed its First Amended Answer to First Amended Complaint and Counterclaims, a copy of which is attached hereto as Exhibit B. In its First Amended Answer and Counterclaims, Euro-Pro again alleges inequitable conduct (Third Counterclaim and Second Affirmative Defense) and tortious interference with business and unfair competition (Fourth and Fifth Counterclaims, respectively, and Third Affirmative Defense).

Euro-Pro's Third Counterclaim states, in pertinent part, as follows:

> 47.    Upon information and belief, the '855 and '921 patents are unenforceable by reason of misconduct in the process of obtaining the patents from the United States Patent and Trademark Office ("PTO"). Upon information and belief, Holmes did not bring to the PTO's attention certain material prior art and other information material to the patentability of its applications.

> 48.    Specifically, beginning in or about November, 2003, Euro-Pro notified Holmes that it had material prior art regarding the subject matter of the '483, '855 and '921 patents and offered to provide it to Holmes. Euro-Pro informed Holmes that the prior art raised substantial doubt about the patentability of Holmes's claimed inventions and that, once in possession of the prior art, Holmes would need to reconsider its accusations of patent infringement against Euro-Pro. Holmes, however, refused Euro-Pro's offer.

> 49.    Thereafter, Holmes filed a number of information disclosure statements ("IDSs") with the PTO in which Holmes represented falsely to the PTO that "Applicants are not aware of any other references to be identified at this time" and failed to include any information about the prior art references offered by Euro-Pro. By such affirmative statements and omissions, Holmes

intentionally deceived the PTO into believing that the IDSs submitted by Holmes contained a complete listing of the prior art material to Holmes's patent application, when in fact Holmes had omitted from its IDSs that other, material prior art was available to Holmes and Holmes had refused an offer to see it. The dates of filing for Holmes's IDSs include, without limitation, November 13 and December 1, 2003. In addition, Holmes also filed other documents relating to the '921 patent on December 1, 2002, and May 7 and October 19, 2004. Holmes intentionally omitted any mention of the prior art references offered by Euro-Pro in any of these written communications.

51.     Discovery in this matter has not yet begun, and Euro-Pro has not yet been granted access to Holmes's documents and witnesses to determine whether there is other material prior art that Holmes intentionally concealed or omitted from its IDSs. Accordingly, Euro-Pro reserves the right to amend these pleadings (with leave of court, if appropriate) to include additional information regarding the unenforceability of Holmes's patents.

(Exhibit B, ¶¶ 47-49 and 51).

Euro-Pro's Second Affirmative Defense states, in pertinent part, as follows:

21.     The '855 and '921 patents are unenforceable for inequitable conduct, as described more specifically in the Third Counterclaim set forth below.

(Exhibit B, ¶ 21).

Euro-Pro has also improperly plead that Holmes has intentionally interfered with its contractual relations and engaged in unfair competition. Euro-Pro's Fourth Counterclaim states, in pertinent part, as follows:

56.     Specifically, upon information and belief, Holmes has asserted falsely to others, including Euro-Pro's existing and prospective customers, that Euro-Pro's products infringe one or more claims of the '483, '855 and '921 patents - at a time when Holmes knew or should have known that such statements were

> false and with the intention that such statements would cause harm
> to Euro-Pro's existing and prospective contractual relations.

(Exhibit B, ¶ 56).

Euro-Pro's Fifth Counterclaim states, in pertinent part, as follows:

> 61.    Specifically, upon information and belief, Holmes has
> asserted falsely to others, including Euro-Pro's existing and
> prospective customers, that Euro-Pro's products infringe one or
> more claims of the '483, '855 and '921 patents-at a time when
> Holmes knew or should have known that such statements were
> false.

(Exhibit B, ¶ 61).

Euro-Pro's Third Affirmative Defense states, in pertinent part, as follows:

> 23.    Specifically, upon information and belief, Holmes has
> asserted falsely to others, including Euro-Pro's existing and
> prospective customers, that Euro-Pro's products infringe one or
> more claims of the '483, '855 and '921 patents-at a time when
> Holmes knew or should have known that such statements were
> false and with the intention that such statements would cause harm
> to Euro-Pro's existing and prospective contractual relations.

(Exhibit B, ¶ 23).

In its prayer for relief on its counterclaims, Euro-Pro seeks an adjudication declaring that

the claims of the patents-in-suit are invalid and unenforceable (paragraphs B and C) and that

Holmes intentionally interfered with contractual relations and engaged in unfair competition.

(Paragraphs D and E).  However, Euro-Pro's Second and Third Affirmative Defenses and Third,

Fourth and Fifth Counterclaims contain no specific allegations of conduct that would justify any

such findings.  Accordingly, these allegations should be stricken and/or dismissed.

## II.    ARGUMENT

### A.    Euro-Pro's Allegation of Inequitable Conduct Fails To Comply With Rule 9(b)

#### 1.    The legal framework of Rule 9(b) with respect to inequitable conduct in patent cases.

Federal Rule of Civil Procedure 9(b) provides that:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b).

In patent cases, this and other Courts have held that an allegation of inequitable conduct is treated as an averment of fraud which must be stricken if not plead with particularity as required by Rule 9(b).  *See Systemation, Inc. v. Engel Industries, Inc.,* 183 F.R.D. 49, 51 (D. Mass. 1998) (collecting cases holding Rule 9(b) applicable to inequitable conduct claims and granting motion to dismiss where pleading failed to identify any particular prior art it claimed should have been disclosed).  Furthermore, the Court of Appeals for the Federal Circuit has expressed its explicit displeasure for broad sweeping inequitable conduct charges.  *Burlington Indus. Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) (noting that the charging of inequitable conduct in patent cases has become an absolute plague).  Stricter pleading requirements "might act as a check on such abuses."  *Systemation*, 183 F.R.D. at 51.

In matters of procedure not unique to patent law, the Federal Circuit applies the law of the forum's Circuit Court Of Appeals.  *Systemation*, 183 F.R.D. at 51, n.1 (citing *Panduit Corp. v. All States Plastic Manufacturing, Inc.*, 744 F.2d 1564, 1574-75 (Fed. Cir. 1984)).  The First Circuit interprets Rule 9(b) to require "specification of the time, place ***and content*** of an alleged false representation." (emphasis added).  *Johnson v. Brown & Williamson Tobacco Corporation*,

- 6 -

122 F. Supp.2d 194, 207 (D. Mass. 2000); *see also Systemation*, 183 F.R.D. at 51 (recognizing that First Circuit strictly applies Rule 9(b)).  Accordingly, Euro-Pro must therefore state the time, place and content of the alleged inequitable conduct or the pleading may be dismissed. *Systemation*, 183 F.R.D. at 51.

    In patent cases, the "[i]nequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must [eventually] be proven by clear and convincing evidence". *Xilinx Inc. v. Altera Corp.*, 33 U.S.P.Q.2d 1149, 1152, 1994 WL 782236, (N.D. Cal. 1994)(citing *Kingsdown Medical Consultants v, Holister, Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988);  *See also Upjohn Company v. Mova Pharmaceutical Corporation,* 225 F.3d 1306, 1312 (Fed. Cir. 2000) ("Inequitable conduct requires that the patentee withheld material information from the patent examiner or submitted false material information, with the intent to deceive or mislead the examiner into granting the patent");  *Per Septive Biosystems, Inc. v. Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1318 (Fed. Cir. 2000) (elements of inequitable conduct are (1) that material information was withheld; (2) with an intent to deceive).  Thus, both knowledge of the prior art and its materiality as well as withholding the same with an intent to deceive the Patent Office are required elements bearing a high level of proof.

    In accordance with the Federal Circuit precedent to follow the law of the Circuit Court, at a minimum, Euro-Pro is required to state the time, place and content of the alleged inequitable conduct.  *Systemation*, 183 F.R.D. at 51, citing *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (Fed. Cir. 1997); *Xilinx Inc.,* 33 U.S.P.Q.2d at 1152.  Euro-Pro's failure to identify the alleged prior art supports striking and/or dismissal of these claims.

2.    **Euro-Pro's claim of inequitable conduct does not identify the alleged prior art and should be stricken.**

Euro-Pro's Third Counterclaim for unenforceability of the patents-in-suit is purportedly based upon an offer from Euro-Pro to provide Holmes with material prior art, which offer Holmes allegedly denied. (Exhibit B, ¶ 48). Thus, the pleading on its face lacks both the identification of the prior art and the requisite knowledge by Holmes as to what the prior art consisted of. Euro-Pro's pleading states in no uncertain terms that Euro-Pro never disclosed the alleged material prior art to Holmes. Furthermore, the pleading only states that the unidentified prior art was believed it to be material by Euro-Pro, not Holmes. Thus, Euro-Pro has failed to state with particularity, as required by the First Circuit, the time, place and **_content_** of the alleged fraudulent act. Euro-Pro clearly has failed to meet its burden since it has not indicated any particular prior art it claims should have been disclosed to the Patent and Trademark Office ("PTO"). *Systemation,* 183 F.R.D. at 51 (holding that counter-plaintiff clearly failed to meet its burden since it failed to identify any particular prior art it claims should have been disclosed to the Patent and Trademark Office).

If, as Euro-Pro has plead, it is aware of prior art which raises "substantial doubt about the patentability of Holmes' claimed inventions and that, once in possession of the prior art, Holmes would need to reconsider its accusations of patent infringement against Euro-Pro," it should disclose such information immediately. During the Local Rule 7.1 conferences, Holmes repeatedly requested that if such information exists, it should be disclosed. Euro-Pro has not disclosed the alleged prior art and fails to do so in its pleading and Holmes has never had knowledge of Euro-Pro's purported prior art. Thus, Holmes could not possibly withhold unknown information from the Patent Office, which is a requirement to prove inequitable conduct.

Euro-Pro alleges that the inequitable conduct by Holmes was the knowledge that Euro-Pro was supposedly in possession of some unknown prior art and that this fact was not provided to the Patent Office. Such a set of facts does not fall within the scope of duty of disclosure of an applicant for a patent and therefore cannot constitute inequitable conduct. Holmes is unaware of any case law to support Euro-Pro's specious theory of inequitable conduct. The duty of disclosure pursuant to 37 C.F.R. § 1.56 states, *inter alia*:

> Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office *all information **known** to that individual to be material to patentability as defined in this section*. (emphasis added).

37 C.F.R. § 1.56(a).

Without knowledge of the prior art, Holmes could not disclose it nor could Holmes evaluate its materiality. Thus, Euro-Pro has failed to state a claim of inequitable conduct upon which relief could be granted since Holmes had no knowledge of the alleged prior art and could not possibly withhold what it does not know.

Accordingly, Euro-Pro's allegations of inequitable conduct fail to meet the pleading requirements in two ways: (1) Euro-Pro has not identified any particular prior art known to Holmes it claims should have been disclosed to the Patent Office; and (2) Euro-Pro has not stated a claim of inequitable conduct since the requisite knowledge of the prior art by Holmes has not been plead. In fact, Euro-Pro pleads that Holmes did not have knowledge of the prior art in question since Euro-Pro's offer was allegedly not accepted. In view of its failure to meet the requirements of pleading a claim of inequitable conduct with particularity and its failure to state a claim upon which relief could be granted, the Court should strike Euro-Pro's Third

Counterclaim and Second Affirmative Defense pursuant to Rules 9(b) and/or 12(f).

> **3.    Euro-Pro's open-ended request to amend its pleading after discovery is insufficient to avoid dismissal.**

Euro-Pro's Third Counterclaim, paragraph 51, notes that discovery has not yet begun and that Euro-Pro "reserves the right to amend these pleadings based upon such discovery."  While Euro-Pro is correct in stating that discovery has not taken place, such a "request" does not render the claim sustainable.  This portion of the pleading lacks all three required elements of specification of time, place and content of the alleged false representation.  *Systemation,* 183 F.R.D. at 51.  Accordingly, Euro-Pro's Third Counterclaim and Second Affirmative Defense should be stricken in its entirety.

> **B.    Euro-Pro's Fourth and Fifth Counterclaims and Third Affirmative Defense are Legitimate First Amendment Activities Protected by the *Noerr-Pennington* Doctrine and Thus Fail to State a Claim Upon Which Relief Can Be Granted**

> **1.    The legal framework of *Noerr-Pennington* immunity.**

Euro-Pro seeks to have this Court adjudicate unenforceability and liability for alleged activities which are protected under the First Amendment.  The *Noerr-Pennington* doctrine generally protects a company's right to petition the courts for redress.  *See, e.g., Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc*., 508 U.S. 49, 60 (1993) (holding that copyright infringement litigation is protected by *Noerr-Pennington* immunity); *Filmtec Corp. v. Hydranautics*, 67 F.3d 931, 937 (Fed. Cir. 1995) ("The *Noerr-Pennington* doctrine protects those who use the power of government organs, including the judiciary, to further

private ends").  While initially recognized in antitrust litigation, [1] the *Noerr-Pennington* immunity emanates from the First Amendment right of petition.  Thus, the Supreme Court has repeatedly made it clear that the doctrine is independent of its antitrust roots, having application in many relevant contexts.  *See, e.g., Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 742-43 (1983) (immunizing employer from liability for non-antitrust unfair labor practice); *NAACP v. Clairborne Hardware Co.*, 458 U.S. 886, 913-14 (1982) (immunizing a non-antitrust business boycott seeking to vindicate economic and equal rights).

> **2.    *Noerr-Pennington* immunity extends to alleged intentional interference with business and unfair competition claims.**

Following the lead of the Supreme Court in extending the purview of *Noerr-Pennington* beyond antitrust claims, numerous courts have applied the doctrine to various federal and state statutory and common law causes of action which may implicate First Amendment concerns, including claims involving tortious interference with contractual and business relations and unfair competition.  For example, in *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3rd Cir. 1999), the Third Circuit extended *Noerr-Pennington* immunity to litigation activities allegedly leading to tortious interference with contract, tortious interference with prospective economic advantage and unfair competition.  Similarly, in *South Dakota v. Kansas City Southern Indus., Inc.*, 880 F.2d 40, 50 (8th Cir. 1989), the Eighth Circuit applied *Noerr-Pennington* immunity in a claim for tortious interference with contractual relations.

Following the lead of the Supreme Court in extending the purview of *Noerr-Pennington*

The Second Circuit also found *Noerr-Pennington* applicable in a state unfair competition

---

[1] As originally articulated, the *Noerr-Pennington* doctrine provides general immunity from antitrust liability to private parties who petition the government for redress, notwithstanding any anticompetitive purpose or consequences of their petitions.  *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.* 365 U.S. 127, 135-38 (1961) (establishing immunity for petitions to state legislature); *United Mine Workers of America v. Pennington*, 381 U.S. 657-670 (1965) (extending *Noerr* immunity to petitions of public officials).  The Court later extended *Noerr-Pennington* immunity to the right of access to courts.  *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

statutory claim and a tortious interference claim.  *See Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98, 101-02 (2nd Cir. 1983) (opining that the Connecticut courts would likely bar tortious interference claims grounded in non-sham litigation on the basis of *Noerr-Pennington*); *see also Carroll Touch, Inc. v. Electro Mech. Systems, Inc.,* 15 F.3d 1573, 1581-83 (Fed. Cir. 1993) (affirming summary judgment on antitrust as well as state unfair competition claims based on *Noerr-Pennington*); *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc*., 33 F. Supp.2d 122, 123-24 (D. Conn. 1998) (applying *Noerr-Pennington* immunity in the context of tortious interference with contractual relations based on non-sham litigation); *Computer Associates v. American Fundware, Inc*., 831 F. Supp. 1516, 1522-23 (D. Colo. 1993) (applying the doctrine to a counterclaim for unfair competition); *Aircapital Cablevision, Inc. v. Starlink Comm. Group, Inc.*, 634 F. Supp. 316, 326 (D. Kan. 1986) (applying doctrine to claims of tortious interference with contract); *Pennpac Intr'l, Inc. v. Rotonics Mfg, Inc.,* 2001 U.S. Dist. LEXIS 6842 (E.D. Pa. May 25, 2001) (applying the doctrine to tortious interference claim).

Euro-Pro's Fourth and Fifth Counterclaims and Third Affirmative Defense allege intentional interference with existing and prospective contractual relations and patent misuse for asserting the patents-in-suit against Euro-Pro and communicating such assertion to unspecified third parties.  Thus, Euro-Pro's assertions clearly fall within the class of claims in which the courts impose *Noerr-Pennington* immunity and the Court should apply the doctrine in this case.

      **3.**     **Holmes' assertion of infringement cannot fall within the "sham" exception to *Noerr-Pennington*.**

Although the *Noerr-Pennington* doctrine is broad and extensive, the Courts have carved out a limited "sham" litigation exception to the *Noerr-Pennington* doctrine, which, as shown

below, does not apply here.  The Supreme Court has established a two-part definition of sham

litigation:

> First, the lawsuit must be objectively baseless in the sense that no
> reasonable litigant could realistically expect success on the merits.  If
> an objective litigant could conclude that the suit is reasonably
> calculated to elicit a favorable outcome, the suit is immunized under
> Noerr, and an antitrust claim premised on the sham exception must
> fail.  Only if challenged litigation is objectively meritless may a court
> examine the litigant's subjective motivation.  Under this second part of
> our definition of sham, the court should focus on whether the baseless
> lawsuit conceals "an attempt to interfere directly with the business
> relationships of a competitor," *Noerr*, 365 U.S. at 114, through the
> "use [of] the governmental process--as opposed to the outcome of that
> process--as an anticompetitive weapon," Columbia v. Omni Outdoor
> Advertising, Inc. 499, U.S. 365, 380 (1991).  This two-tiered process
> requires the plaintiff to disprove the challenged lawsuit's legal viability
> before the court will entertain evidence of the suit's economic viability.

*Professional Real Estate*, 508 U.S. at 60-61.

To ascertain "baselessness," a court must consider whether the litigant had "probable

cause" to initiate the legal action.  *Id* at. 62.  If there is probable cause, the defendant

automatically enjoys *Noerr-Pennington* immunity, and the second, subjective motivation prong

of the *Professional Real Estate* test becomes irrelevant.  See *Id*. at 63.  Probable cause to sue

may exist when the law is unsettled or when an "action [is] arguably 'warranted by existing law'

or at the very least [is] based on an objectively 'good faith argument for the extension… of

existing law.'"  *Id*. at 65 (quoting Fed. R. Civ. P. 11).  Essentially, the Supreme Court clarified

that litigation can only be construed as a "sham" if the claims are "so baseless that no reasonable

litigant could realistically expect to secure favorable relief."  *Professional Real Estate,*

508 U.S. at 62; *Filmtec*, 67 F.3d at 938; *Carroll Touch*, 15 F.3d at 1583.

Holmes' patent infringement suit against Euro-Pro is clearly not "objectively baseless." Holmes owns the patents-in-suit, as alleged. Moreover, these patents enjoy a statutory presumption of validity. 35 U.S.C. § 282. *Concrete Unlimited, Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1539 (Fed. Cir. 1985). Holmes filed suit against Euro-Pro because it reasonably believes that Euro-Pro sells products which fall within the scope of the claims of each of the patents-in-suit. Holmes' First Amended Complaint contains sufficient allegations of patent infringement, and it is presumed that such action is brought in good faith. *See Technicon Instruments Corp. v. Alpkem Corp.*, 866 F.2d 417, 421 (Fed. Cir. 1989). From any objective analysis, the allegations in Holmes' complaint are not facially "so baseless that no reasonable litigant could realistically expect to secure favorable relief." *Professional Real Estate,* 508 U.S. at 62. Indeed, Euro-Pro has not alleged that Holmes' patent infringement suit is "objectively baseless," or that Holmes has no probable cause to bring the suit, thus compelling the conclusion that Holmes' patent infringement suit does not fall within the "sham" exception to *Noerr-Pennington*. Therefore, to the extent that Euro-Pro's counterclaims rely on Holmes' filing and prosecution of its patent infringement suit against Euro-Pro or communications to third parties regarding the publicly available claim of infringement in this lawsuit, Holmes is immune from liability under the *Noerr-Pennington* doctrine and the Court should dismiss the counterclaims for failure to state a cause of action for which relief may be granted.

4.    **Alleged communications to third parties about litigation are immune under the *Noerr-Pennington* doctrine.**

*Noerr-Pennington* immunity attaches to the mere threat of a lawsuit and to communications to third parties relating to litigation or threatened litigation. At least five Federal Circuit Courts of Appeal have concluded that pre-litigation threats of suit or other communications attendant to litigation enjoy the same immunity as litigation itself: *Glass Equip.*

- 14 -

*Development, Inc. v. Besten, Inc*., 174 F.3d 1337, 1343-44 (Fed. Cir. 1999) (affirming dismissal, under *Noerr-Pennington*, of antitrust counterclaims based on litigation and letters threatening litigation); *CVD, Inc. v. Raytheorn Co*., 769 F.2d 842, 850-51 (1st Cir. 1985); *Primetime 24 Joint Venture v. NBC, Inc*., 219 F.3d 92, 100 (2nd Cir. 2000) (holding that letters incidental to litigation are covered under the doctrine).  Therefore, threats of litigation, as well as a litigant's communications to third parties announcing and publicizing litigation that already has been filed, enjoy the same level of protection from liability as litigation itself.  *Coastal States Mkg., Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) (same); *McGuire Oil Co. v. Mapco, Inc*., 958 F.2d 1552, 1558-60 (11th Cir. 1992) (same).

> **5.    Holmes' alleged communications with third parties are immune.**

Even if Holmes communicated to a third party about this lawsuit or that Euro-Pro's accused products infringed Holmes' patents-in-suit, any such communication enjoys *Noerr-Pennington* immunity under the *Professional Real Estate* test.  As established above, Holmes' patent infringement suit against Euro-Pro is not objectively baseless and therefore does not fall within the "sham" exception of *Noerr-Pennington*.  Moreover, a patentee whose patents are being infringed violates no protected rights when he or she so notifies infringers and potential infringers.  *Concrete Unlimited,* 776 F.2d at 1539 (Fed. Cir. 1985); *Glass Equip*., 174 F.3d at 1343-44.

Despite several detailed Local Rule 7.1 conferences, Euro-Pro did not amend its pleading with respect to the tortious interference counterclaim.  (Compare Exhibit A, ¶ 52 and Exhibit B, ¶ 56).  Euro-Pro has not identified any third party to whom the alleged communications were made.  Thus, the pleading is faulty on its face since it does not allege facts sufficient to state a claim.  Notwithstanding the above, even assuming the statements plead by Euro-Pro are

sufficient, any such alleged communications with a third party to truthfully communicate that an

infringement suit has been filed, and to publicly assert that Euro-Pro's accused products infringe

Holmes' patent rights are not actionable. *Concrete Unlimited*, 776 F.2d at 1537 (holding that a

patent holder has the right to enforce his or her patent and to communicate with potential

infringers of its enforcement activities). As such, this Court should conclude that even if

sufficient facts were plead, which they are not, any such alleged communication with a third

party is "an objectively plausible effort to enforce rights" and deserved of *Noerr-Pennington*

protection. *Professional Real Estate*, 508 U.S. at 57.

> **6.      Euro-Pro has failed to allege facts
>         sufficient to overcome *Noerr-Pennington*.**

Euro-Pro's allegations that Holmes knew its patents were not infringed are entirely

conclusory and cannot pass muster under even the liberal pleading standards of Rule 9.

Furthermore, courts have long held that where First Amendment precepts, which the *Noerr-*

*Pennington* doctrine is meant to protect, are implicated, conclusory allegations having no factual

support, such as exist in Euro-Pro's counterclaims, cannot survive a motion to dismiss. *See, e.g.,*

*Franchise Realty Interstate Corp. v. McDonald's Systems of Cal., Inc.* 542 F.2d 1076, 1082-85

(9th Cir. 1976) *cert. denied* 420 U.S. 940 (1977); *Oregon Natural Resources Counsil v. Mohla,*

944 F.2d 531, 536 (9th Cir. 1991); *Hartford Life Insurance Co. v. Variable Annuity Life Ins. Co.,*

964 F. Supp. 624, 627-28 (D. Conn. 1997); *Gen-Probe, Inc. v. Amoco Corp., Inc.,* 926 F. Supp.

948, 956-57 (S.D. Cal. 1996) *citing Boone v. Redev't Agency of City of San Jose,* 841 F.2d 886,

895-96 (9th Cir. 1988) ("Conclusory allegations are insufficient to strip [activities] of their *Noerr-*

*Pennington* protection").

In *Franchise Realty*, the Ninth Circuit expressly held that "in any case, whether antitrust

or something else, where a plaintiff seeks damages or injunctive relief, or both, for conduct

which is *prima facie* protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Franchise Realty*, 542 F.2d at 1082-83.  There, the court found allegations of bad faith and other activities, which were far more detailed than those found in Euro-Pro's counterclaims, to be merely conclusory, devoid of underlying factual allegations, and upheld a motion to dismiss.  *See Id.* at 1078-79, 1085.

Euro-Pro's counterclaims fail to state facts and are nothing more than mere conclusory assertions.  The essential core of Euro-Pro's counterclaims at issue is that Holmes allegedly knew that its patents were unenforceable and not infringed at the time that Holmes filed its patent infringement suit against Euro-Pro's and allegedly communicated the existence of this action to an unspecified third party.  Euro-Pro thus casts what is ordinarily protected First Amendment activities into a bad faith effort to interfere with a contract.  However, Euro-Pro does not properly state facts to buttress the naked allegations that the patents are unenforceable, how or why they are unenforceable or not infringed, or how or why Holmes knew or knows that the patents-in-suit are unenforceable or not infringed.  As previously noted, the allegations of inequitable conduct clearly fail to meet the burden of Rule 9(b) and cannot support the alleged unenforceability.  Nor are there any factual allegations to support that Holmes had knowledge of any such broadly alleged infirmities.

Here, Holmes is charged with truthfully communicating to some unspecified third party the fact that it sued Euro-Pro for infringing its patents and its good faith belief that Euro-Pro's accused products infringe the patents-in-suit.  Such conduct is fundamentally protected under the First Amendment.  Therefore, Euro-Pro has failed to adequately plead that Holmes engaged in any bad faith by filing its patent infringement suit or by allegedly communicating that fact to

some unspecified third-party that Euro-Pro's products infringed Holmes' patents-in-suit. Accordingly, the Court should dismiss in its entirety Euro-Pro's Third Affirmative Defense, and Third and Fourth Counterclaims regarding patent misuse and intentional interference with contractual relations.

## III.    CONCLUSION

For the reasons stated herein, Euro-Pro's Third, Fourth and Fifth Counterclaims and Second and Third Affirmative Defenses should be stricken and/or dismissed in their entirely pursuant to Rules 9(b), 12(b) and/or 12(f).

THE HOLMES GROUP, INC.
By its Attorneys,


Dated:  June 24, 2005           /s/ Charles R. Hoffmann
                                Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
                                CRHDocket@hoffmannbaron.com
                                Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
                                GTHDocket@hoffmannbaron.com
                                HOFFMANN & BARON, LLP
                                6900 Jericho Turnpike
                                Syosset, New York  11791-4407
                                Telephone:  (516) 822-3550
                                Facsimile:  (516) 822-3582

                                and

                                Nicholas J. Nesgos
                                BBO No. 553177
                                nnesgos@pbl.com
                                Jennifer Finger
                                BBO No. 641830
                                jfinger@pbl.com
                                Posternak Blankstein & Lund LLP
                                Prudential Tower, 800 Boylston Street
                                Boston, Massachusetts  02199-8004
                                Telephone:  (617) 973-6100
                                Facsimile:  (617) 367-2315

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,       :

          Plaintiff,    :      Civil Action No.

    v.                    :      05-CV-10504 (NMG)

                          :

EURO-PRO OPERATING, LLC,     :

          Defendant.   :

## ANSWER TO FIRST AMENDED
## COMPLAINT AND COUNTERCLAIMS

EURO-PRO OPERATING, LLC ("Euro-Pro"), defendant in the above-captioned

matter, responds to the first amended complaint of The Holmes Group, Inc. ("Holmes")

and asserts the following counterclaims as follows:

### *Complaint Section Entitled "The Parties"*

1.     Euro-Pro admits the allegations in paragraph 1.

2.     Euro-Pro admits the allegations in paragraph 2.

### *Complaint Section Entitled "Subject Matter Jurisdiction"*

3.     Admitted in part and denied in part. Euro-Pro admits that there is

jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1338(a). Euro-Pro denies the

allegation or implication that any of its activities have resulted in any actionable claim in

favor of Holmes.

### *Complaint Section Entitled "In Personam Jurisdiction"*

4.     Admitted in part and denied in part. Euro-Pro admits that it is subject to

*in personam* jurisdiction in this judicial district. Euro-Pro denies the allegation or

implication that any of its activities have resulted in any actionable claim in favor of Holmes.

***Complaint Section Entitled "Venue"***

5.    Admitted in part and denied in part.  Euro-Pro admits that venue is proper in this judicial district.  Euro-Pro denies the allegation or implication that any of its activities have resulted in any actionable claim in favor of Holmes.

***Complaint Section Entitled "Patent Infringement"***

6.    Admitted in part and denied in part.  Euro-Pro admits that Holmes's name appears on the cover page of U.S. Patent No. 6,573,483 B1 ("the '483 patent"), entitled "Programmable Slow-Cooker Appliance" and issued on June 3, 2003, as the patent's assignee.  Euro-Pro is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and so the same are denied.

7.    Denied.  By way of further answer, Euro-Pro states affirmatively that the '483 patent is either invalid, unenforceable or both and not "duly and legally issued" as alleged by Holmes.  Euro-Pro incorporates by reference the allegations set forth below under the "Counterclaims" heading.

8.    Admitted in part and denied in part.  Euro-Pro admits that Holmes's name appears on the cover page of U.S. Patent No. 6,740,855 B1 ("the '855 patent"), entitled "Programmable Slow-Cooker Appliance" and issued on May 25, 2004, as the patent's assignee.  Euro-Pro is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in this paragraph, and so the same are denied.

9.      Denied.  By way of further answer, Euro-Pro states affirmatively that the '855 patent is either invalid, unenforceable or both and not "duly and legally issued" alleged by Holmes.  Euro-Pro incorporates by reference the allegations set forth below under the "Counterclaims" heading.

10.     Admitted in part and denied in part.  Euro-Pro admits that Holmes's name appears on the cover page of U.S. Patent No. 6,872,921 B1 ("the '921 patent"), entitled "Programmable Slow-Cooker Appliance" and issued on March 29, 2005, as the patent's assignee.  Euro-Pro is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and so the same are denied.

11.     Euro-Pro is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and so the same are denied.

12.     Admitted in part and denied in part.  Euro-Pro admits that it offers for sale and sells the product known as the "Programmable Intelligent Gourmet Slow Cooker," model number KC276T, and that the owner's manual for this product is attached to the amended complaint as Exhibit "D."  The remaining allegations are denied.  By way of further answer, Euro-Pro states affirmatively that the '483, '855 and '921 patents are either invalid, unenforceable or both and are not being infringed by Euro-Pro.

13.     Denied.  By way of further answer, Euro-Pro states affirmatively that the '483, '855 and '921 patents are either invalid, unenforceable or both and are not being infringed by Euro-Pro.

14.    Denied.  By way of further answer, Euro-Pro states affirmatively that the '483, '855 and '921 patents are either invalid, unenforceable or both and are not being infringed by Euro-Pro.

15.    Admitted in part and denied in part.  Euro-Pro admits that Stanley Rosenzweig is a former employee of Holmes, a current employee of Euro-Pro, and a part-owner of both Holmes and Euro-Pro.  The remaining allegations in this paragraph are denied.  By way of further answer, Euro-Pro states affirmatively that Stanley Rosenzweig has not conveyed to Euro-Pro any alleged trade secrets belonging to Holmes and that any alleged trade secrets covering the subject matter of the '483, '855 and '921 patents are sufficient as a matter of law to invalidate them.

16.    Admitted in part and denied in part.  Euro-Pro admits that former employees of Holmes are currently employed by Euro-Pro, including Heather Jones-Lawlor.  The remaining allegations in this paragraph are denied.  By way of further answer, Euro-Pro states affirmatively that any former employees of Holmes were hired lawfully and properly, none of them have conveyed to Euro-Pro any alleged trade secrets belonging to Holmes, and that any alleged trade secrets covering the subject matter of the '483, '855 and '921 patents are sufficient as a matter of law to invalidate them.

17.    Denied.  By way of further answer, Euro-Pro states affirmatively that the '483, '855 and '921 patents are either invalid, unenforceable or both and are not being infringed by Euro-Pro.

18.    Denied.  By way of further answer, Euro-Pro states affirmatively that the '483, '855 and '921 patents are either invalid, unenforceable or both and are not being infringed by Euro-Pro.

19.     Denied.  By way of further answer, Euro-Pro states affirmatively that the '483, '855 and '921 patents are either invalid, unenforceable or both and are not being infringed by Euro-Pro.

### First Affirmative Defense

20.     Euro-Pro is not liable for infringement of the '483, '855 or '921 patents nor has it contributed to or induced their infringement.  The amended complaint, therefore, fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

21.     The '483, '855 and '921 patents are invalid, unenforceable and void for failure to comply with the conditions for patentability as set forth in 35 U.S.C. § 101 *et seq.*

### Third Affirmative Defense

22.     The '483, '855 and '921 patents are unenforceable for patent misuse.

### Fourth Affirmative Defense

23.     Holmes has knowingly and intentionally acquiesced to any alleged infringement described in Holmes's amended complaint.  The amended complaint, therefore, is barred by waiver, release, estoppel and license.

*Fifth Affirmative Defense*

24.    Holmes has delayed bringing this action against Euro-Pro. The amended complaint, therefore, is barred by laches and statute of limitations.


*Sixth Affirmative Defense*

25.    The claims of the '483, '855 and '921 patents are not and have not been infringed and Holmes is estopped from asserting infringement because of arguments, representations, assertions and admissions during the prosecution of these patents.


# COUNTERCLAIMS

*Jurisdiction and Venue*

26.    These counterclaims arise under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

27.    Jurisdiction in this court is proper under 28 U.S.C. §§ 1331 and 1338. Furthermore, this Court has personal jurisdiction over Holmes based upon, among other things, its domicile in this judicial district and the filing of this civil action.

28.    Venue in this court is proper under 28 U.S.C. § 1391.


*The Parties*

29.    Euro-Pro is a Delaware corporation having a principal place of business at 1210 Washington Street, Newton, Massachusetts 02465-2147.

30.    Upon information and belief, Holmes is a Massachusetts corporation having a principal place of business at One Holmes Way, Milford, Massachusetts 01757.

*Allegations Common to All Counts*

31.    Euro-Pro incorporates by reference all of the statements set forth above in its answer to Holmes's amended complaint.

32.    Upon information and belief, Holmes purports to be the assignee and owner of the '483, '855 and '921 patents.

33.    On or about March 17, 2005, Holmes filed its complaint in this action seeking, *inter alia*, a judgment of patent infringement, that Euro-Pro has willfully directly infringed, actively induced others to infringe, and has contributed to the infringement of the '483 and '855 patents, and a preliminary and permanent injunction enjoining Euro-Pro from making, using, importing, offering for sale, and selling allegedly infringing products.  On or about March 31, 2005, Holmes filed its first amended complaint against Euro-Pro, alleging infringement of the '483, '855 and '921 patents.

34.    As set forth above, Euro-Pro denies that it has infringed the '483, '855 or '921 patents or that it has willfully directly infringed, actively induced others to infringe, and/or has contributed to the infringement of any valid or enforceable claim of the patents, and Euro-Pro further alleges that the patents are invalid, unenforceable or both.

35.    Based upon the foregoing, as well as Holmes' allegations that Euro-Pro has infringed the '483, '855 or '921 patents, an immediate and justiciable controversy exists between Euro-Pro and Holmes as to the infringement, validity, and enforceability of the patents.

*First Counterclaim—Non-infringement of the '483, '855 or '921 Patents*

36.    The allegations set forth above are incorporated herein by reference.

37.    There is an actual, substantial, and continuing justiciable controversy between Euro-Pro and Holmes regarding the alleged infringement of the '483, '855 and '921 patents.

38.    Euro-Pro does not infringe the '483, '855 or '921 patents.

39.    Euro-Pro requests, and is entitled to, a declaratory judgment that it does not infringe any claim of the '483, '855 or '921 patents.

### Second Counterclaim—Invalidity of the '483, '855 and '921 Patents

40.    The allegations set forth above are incorporated herein by reference.

41.    There is an actual, substantial, and continuing justiciable controversy between Euro-Pro and Holmes regarding the invalidity of the '483, '855 and '921 patents.

42.    The '483, '855 and '921 patents are invalid for failure to comply with the patent laws of title 35 of the Untied States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112, and the judicial doctrine of double patenting.

43.    Euro-Pro requests, and is entitled to, a declaratory judgment that the '483, '855 and '921 patents are invalid under 35 U.S.C. §§ 101, 102, 103 and 112, and/or the judicial doctrine of double patenting.

### Third Counterclaim—Unenforceability of the '483, '855 and '921 Patents

44.    The allegations set forth above are incorporated herein by reference.

45.    There is an actual, substantial, and continuing justiciable controversy between Euro-Pro and Holmes regarding the enforceability of the '483, '855 and '921 patents.

46.    Upon information and belief, the '483, '855 and '921 patents are unenforceable by reason of misconduct in the process of obtaining the patents from the United States Patent and Trademark Office ("PTO"). Upon information and belief, Holmes did not bring to the PTO's attention certain material prior art and other information material to the patentability of its applications.

47.    Upon information and belief, the '483, '855 and '921 patents are unenforceable by reason of misuse of the patents since their issue. Upon information and belief, Holmes has asserted falsely to others, including Euro-Pro's customers and potential customers, that Euro-Pro's products infringe one or more claims of the '483, '855 and '921 patents—at a time when Holmes knew or should have known that such statements were false and with the intention that such statements would cause harm to Euro-Pro's existing and prospective contractual relations.

48.    Euro-Pro requests, and is entitled to, a declaration that the patents-in-suit are unenforceable.

*Fourth Counterclaim—Intentional Interference with Existing and Prospective Contractual Relations*

49.    The allegations set forth above are incorporated herein by reference.

50.    Euro-Pro has contractual relations with existing customers and a reasonable expectation of contractual relations with prospective customers for its

products, including the "Programmable Intelligent Gourmet Slow Cooker," model number KC276T.

51.    Holmes knows of Euro-Pro's existing and prospective contractual relations and has intentionally and wrongfully interfered with them.

52.    Specifically, upon information and belief, Holmes has asserted falsely to others, including Euro-Pro's existing and prospective customers, that Euro-Pro's products infringe one or more claims of the '483, '855 and '921 patents—at a time when Holmes knew or should have known that such statements were false and with the intention that such statements would cause harm to Euro-Pro's existing and prospective contractual relations.

53.    Upon information and belief, such acts of tortious interference have been committed in this and other judicial districts and will continue unless enjoined by the Court.

54.    Euro-Pro has suffered and will continue to suffer damages and irreparable injury as a result of Holmes' tortious interference.

***Prayer for Relief***

WHEREFORE, Euro-Pro requests that judgment be entered in its favor and against Holmes, and that Euro-Pro be granted the following relief:

A.    That a judgment be entered declaring that Euro-Pro has not directly infringed, contributorily infringed, or induced the infringement of the '483, '855 and '921 patents;

B.     That a judgment be entered declaring that the '483, '855 and '921 patents are invalid;

C.     That a judgment be entered declaring that the '483, '855 and '921 patents are unenforceable;

D.     That a judgment be entered preliminarily and permanently enjoining Holmes, its officers, subsidiaries, parents, agents, servants, employees, attorneys, and all persons in active concert with Holmes, from asserting or otherwise seeking to enforce the '483, '855 and '921 patents against Euro-Pro or anyone making, using, importing, selling, or offering for sale products manufactured and/or sold by Euro-Pro;

E.     That a judgment be entered preliminarily and permanently enjoining Holmes, its officers, subsidiaries, parents, agents, servants, employees, attorneys, and all persons in active concert with Holmes, from any further interference with Euro-Pro's existing and prospective contractual relations;

F.     That Holmes's amended complaint be dismissed with prejudice and that Holmes take nothing by its amended complaint;

G.     That Euro-Pro be awarded compensatory damages for any portion of the injury caused by Holmes that is compensable through the payment of money;

H.     That Euro-Pro's counterclaims be declared exceptional under 35 U.S.C. § 285 and that Euro-Pro be awarded its costs of suit, including reasonable attorney's fees and costs incurred in this action; and

I.    That Euro-Pro be awarded such other and further relief as the Court may

deem appropriate.

Dated:  April 22, 2005

EURO-PRO OPERATING, LLC,

By its attorneys,

Daniel J. Gleason (BBO #194900)
Ronald E. Cahill (BBO# 638200)
Michelle Chassereau Jackson (BBO #654825)
NUTTER MCCLENNEN & FISH LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604
(617) 439-2000

Of Counsel:

Roger A. Colaizzi
Jeffrey L. Eichen
Michelle M. Marcus
VENABLE LLP
575 7th Street, NW
Washington, D.C.  20004
Tel:  (202) 344-4000

1423929.1

CERTIFICATE OF SERVICE
I hereby certify that on this day a true
copy of the above document was served upon the
attorneys of record for each party by mail/by hand
Date: 4/22/05

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THE HOLMES GROUP, INC.,                    :
                        Plaintiff,         :        Civil Action No.
        v.                                 :        05-CV-10504 (NMG)
                                           :
EURO-PRO OPERATING, LLC,                   :
                        Defendant.         :

FIRST AMENDED ANSWER TO
FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

        EURO-PRO OPERATING, LLC ("Euro-Pro"), defendant in the above-captioned

matter, responds to the first amended complaint of The Holmes Group, Inc. ("Holmes")

and asserts the following counterclaims as follows:


*Complaint Section Entitled "The Parties"*

        1.      Euro-Pro admits the allegations in paragraph 1.

        2.      Euro-Pro admits the allegations in paragraph 2.


*Complaint Section Entitled "Subject Matter Jurisdiction"*

        3.      Admitted in part and denied in part. Euro-Pro admits that there is

jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1338(a). Euro-Pro denies the

allegation or implication that any of its activities have resulted in any actionable claim in

favor of Holmes.


*Complaint Section Entitled "In Personam Jurisdiction"*

        4.      Admitted in part and denied in part. Euro-Pro admits that it is subject to

*in personam* jurisdiction in this judicial district. Euro-Pro denies the allegation or

implication that any of its activities have resulted in any actionable claim in favor of

Holmes.


***Complaint Section Entitled "Venue"***

     5.     Admitted in part and denied in part. Euro-Pro admits that venue is proper

in this judicial district. Euro-Pro denies the allegation or implication that any of its

activities have resulted in any actionable claim in favor of Holmes.


***Complaint Section Entitled "Patent Infringement"***

     6.     Admitted in part and denied in part. Euro-Pro admits that Holmes's name

appears on the cover page of U.S. Patent No. 6,573,483 B1 ("the '483 patent"), entitled

"Programmable Slow-Cooker Appliance" and issued on June 3, 2003, as the patent's

assignee. Euro-Pro is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in this paragraph, and so the same are

denied.

     7.     Denied. By way of further answer, Euro-Pro states affirmatively that the

'483 patent is either invalid, unenforceable or both and not "duly and legally issued" as

alleged by Holmes. Euro-Pro incorporates by reference the allegations set forth below

under the "Counterclaims" heading.

     8.     Admitted in part and denied in part. Euro-Pro admits that Holmes's name

appears on the cover page of U.S. Patent No. 6,740,855 B1 ("the '855 patent"), entitled

"Programmable Slow-Cooker Appliance" and issued on May 25, 2004, as the patent's

assignee. Euro-Pro is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in this paragraph, and so the same are denied.

9.    Denied. By way of further answer, Euro-Pro states affirmatively that the '855 patent is either invalid, unenforceable or both and not "duly and legally issued" alleged by Holmes. Euro-Pro incorporates by reference the allegations set forth below under the "Counterclaims" heading.

10.    Admitted in part and denied in part. Euro-Pro admits that Holmes's name appears on the cover page of U.S. Patent No. 6,872,921 B1 ("the '921 patent"), entitled "Programmable Slow-Cooker Appliance" and issued on March 29, 2005, as the patent's assignee. Euro-Pro is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and so the same are denied.

11.    Euro-Pro is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph, and so the same are denied.

12.    Admitted in part and denied in part. Euro-Pro admits that it offers for sale and sells the product known as the "Programmable Intelligent Gourmet Slow Cooker," model number KC276T, and that the owner's manual for this product is attached to the amended complaint as Exhibit "D." The remaining allegations are denied. By way of further answer, Euro-Pro states affirmatively that the '483, '855 and '921 patents are either invalid, unenforceable or both and are not being infringed by Euro-Pro.

13.    Denied. By way of further answer, Euro-Pro states affirmatively that the '483, '855 and '921 patents are either invalid, unenforceable or both and are not being infringed by Euro-Pro.

14.     Denied.  By way of further answer, Euro-Pro states affirmatively that the '483, '855 and '921 patents are either invalid, unenforceable or both and are not being infringed by Euro-Pro.

15.     Admitted in part and denied in part.  Euro-Pro admits that Stanley Rosenzweig is a former employee of Holmes, a current employee of Euro-Pro, and a part-owner of both Holmes and Euro-Pro.  The remaining allegations in this paragraph are denied.  By way of further answer, Euro-Pro states affirmatively that Stanley Rosenzweig has not conveyed to Euro-Pro any alleged trade secrets belonging to Holmes and that any alleged trade secrets covering the subject matter of the '483, '855 and '921 patents are sufficient as a matter of law to invalidate them.

16.     Admitted in part and denied in part.  Euro-Pro admits that former employees of Holmes are currently employed by Euro-Pro, including Heather Jones-Lawlor.  The remaining allegations in this paragraph are denied.  By way of further answer, Euro-Pro states affirmatively that any former employees of Holmes were hired lawfully and properly, none of them have conveyed to Euro-Pro any alleged trade secrets belonging to Holmes, and that any alleged trade secrets covering the subject matter of the '483, '855 and '921 patents are sufficient as a matter of law to invalidate them.

17.     Denied.  By way of further answer, Euro-Pro states affirmatively that the '483, '855 and '921 patents are either invalid, unenforceable or both and are not being infringed by Euro-Pro.

18.     Denied.  By way of further answer, Euro-Pro states affirmatively that the '483, '855 and '921 patents are either invalid, unenforceable or both and are not being infringed by Euro-Pro.

19.    Denied.  By way of further answer, Euro-Pro states affirmatively that the '483, '855 and '921 patents are either invalid, unenforceable or both and are not being infringed by Euro-Pro.

**First Affirmative Defense**

20.    Euro-Pro is not liable for infringement of the '483, '855 or '921 patents nor has it contributed to or induced their infringement.  The amended complaint, therefore, fails to state a claim upon which relief can be granted.

**Second Affirmative Defense**

21.    The '483, '855 and '921 patents are invalid and void for failure to comply with the conditions for patentability as set forth in 35 U.S.C. § 101 *et seq.*  The '855 and '921 patents are unenforceable for inequitable conduct, as described more specifically in the Third Counterclaim set forth below.

**Third Affirmative Defense**

22.    The '483, '855 and '921 patents are unenforceable for patent misuse.

23.    Specifically, upon information and belief, Holmes has asserted falsely to others, including Euro-Pro's customers and potential customers, that Euro-Pro's products infringe one or more claims of the '483, '855 and '921 patents—at a time when Holmes knew or should have known that such statements were false and with the intention that such statements would cause harm to Euro-Pro's existing and prospective contractual relations.

*Fourth Affirmative Defense*

24.    Holmes has knowingly and intentionally acquiesced to any alleged infringement described in Holmes's amended complaint. The amended complaint, therefore, is barred by waiver, release, estoppel and license.

*Fifth Affirmative Defense*

25.    Holmes has delayed bringing this action against Euro-Pro. The amended complaint, therefore, is barred by laches and statute of limitations.

*Sixth Affirmative Defense*

26.    The claims of the '483, '855 and '921 patents are not and have not been infringed and Holmes is estopped from asserting infringement because of arguments, representations, assertions and admissions during the prosecution of these patents.

## COUNTERCLAIMS

*Jurisdiction and Venue*

27.    These counterclaims arise under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

28.    Jurisdiction in this court is proper under 28 U.S.C. §§ 1331 and 1338. Furthermore, this Court has personal jurisdiction over Holmes based upon, among other things, its domicile in this judicial district and the filing of this civil action.

29.    Venue in this court is proper under 28 U.S.C. § 1391.

*The Parties*

30.     Euro-Pro is a Delaware corporation having a principal place of business at 1210 Washington Street, Newton, Massachusetts 02465-2147.

31.     Upon information and belief, Holmes is a Massachusetts corporation having a principal place of business at One Holmes Way, Milford, Massachusetts 01757.

*Allegations Common to All Counts*

32.     Euro-Pro incorporates by reference all of the statements set forth above in its first amended answer to Holmes's first amended complaint.

33.     Upon information and belief, Holmes purports to be the assignee and owner of the '483, '855 and '921 patents.

34.     On or about March 17, 2005, Holmes filed its complaint in this action seeking, *inter alia*, a judgment of patent infringement, that Euro-Pro has willfully directly infringed, actively induced others to infringe, and has contributed to the infringement of the '483 and '855 patents, and a preliminary and permanent injunction enjoining Euro-Pro from making, using, importing, offering for sale, and selling allegedly infringing products. On or about March 31, 2005, Holmes filed its first amended complaint against Euro-Pro, alleging infringement of the '483, '855 and '921 patents.

35.     As set forth above, Euro-Pro denies that it has infringed the '483, '855 or '921 patents or that it has willfully directly infringed, actively induced others to infringe, and/or has contributed to the infringement of any valid or enforceable claim of the patents, and Euro-Pro further alleges that the patents are invalid, unenforceable or both.

36.    Based upon the foregoing, as well as Holmes' allegations that Euro-Pro has infringed the '483, '855 or '921 patents, an immediate and justiciable controversy exists between Euro-Pro and Holmes as to the infringement, validity, and enforceability of the patents.

### First Counterclaim—Non-infringement of the '483, '855 or '921 Patents

37.    The allegations set forth above are incorporated herein by reference.

38.    There is an actual, substantial, and continuing justiciable controversy between Euro-Pro and Holmes regarding the alleged infringement of the '483, '855 and '921 patents.

39.    Euro-Pro does not infringe the '483, '855 or '921 patents.

40.    Euro-Pro requests, and is entitled to, a declaratory judgment that it does not infringe any claim of the '483, '855 or '921 patents.

### Second Counterclaim—Invalidity of the '483, '855 and '921 Patents

41.    The allegations set forth above are incorporated herein by reference.

42.    There is an actual, substantial, and continuing justiciable controversy between Euro-Pro and Holmes regarding the invalidity of the '483, '855 and '921 patents.

43.    The '483, '855 and '921 patents are invalid for failure to comply with the patent laws of title 35 of the Untied States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112, and the judicial doctrine of double patenting.

44.    Euro-Pro requests, and is entitled to, a declaratory judgment that the '483, '855 and '921 patents are invalid under 35 U.S.C. §§ 101, 102, 103 and 112, and/or the judicial doctrine of double patenting.

***Third Counterclaim—Unenforceability of the '855 and '921 Patents***

45.    The allegations set forth above are incorporated herein by reference.

46.    There is an actual, substantial, and continuing justiciable controversy between Euro-Pro and Holmes regarding the enforceability of the '855 and '921 patents.

47.    Upon information and belief, the '855 and '921 patents are unenforceable by reason of misconduct in the process of obtaining the patents from the United States Patent and Trademark Office ("PTO"). Upon information and belief, Holmes did not bring to the PTO's attention certain material prior art and other information material to the patentability of its applications.

48.    Specifically, beginning in or about November, 2003, Euro-Pro notified Holmes that it had material prior art regarding the subject matter of the '483, '855 and '921 patents and offered to provide it to Holmes. Euro-Pro informed Holmes that the prior art raised substantial doubt about the patentability of Holmes's claimed inventions and that, once in possession of the prior art, Holmes would need to reconsider its accusations of patent infringement against Euro-Pro. Holmes, however, refused Euro-Pro's offer.

49.    Thereafter, Holmes filed a number of information disclosure statements ("IDSs") with the PTO in which Holmes represented falsely to the PTO that "Applicants are not aware of any other references to be identified at this time" and failed to include

any information about the prior art references offered by Euro-Pro. By such affirmative statements and omissions, Holmes intentionally deceived the PTO into believing that the IDSs submitted by Holmes contained a complete listing of the prior art material to Holmes's patent applications, when in fact Holmes had omitted from its IDSs that other, material prior art was available to Holmes and Holmes had refused an offer to see it. The dates of filing for Holmes's IDSs include, without limitation, November 13 and December 1, 2003. In addition, Holmes also filed other documents relating to the '921 patent on December 1, 2003, and May 7 and October 19, 2004. Holmes intentionally omitted any mention of the prior art references offered by Euro-Pro in any of these written communications.

50. Upon information and belief, Holmes intended that the PTO would rely upon and be deceived by Holmes's knowingly false and incomplete IDSs. Specifically, Holmes intended that the PTO would examine each IDS and rely on its contents in its decision to allow Holmes's patent applications. The PTO actually received and relied upon Holmes's IDSs in its decision to allow Holmes's patent applications.

51. Discovery in this matter has not yet begun, and Euro-Pro has not yet been granted access to Holmes's documents and witnesses to determine whether there is other material prior art that Holmes intentionally concealed or omitted from its IDSs. Accordingly, Euro-Pro reserves the right to amend these pleadings (with leave of court, if appropriate) to include additional information regarding the unenforceability of Holmes's patents.

52. Euro-Pro requests, and is entitled to, a declaration that the '855 and '921 patents are unenforceable.

*Fourth Counterclaim—Intentional Interference with Existing and Prospective*

*Contractual Relations*

53.    The allegations set forth above are incorporated herein by reference.

54.    Euro-Pro has contractual relations with existing customers and a
reasonable expectation of contractual relations with prospective customers for its
products, including the "Programmable Intelligent Gourmet Slow Cooker," model
number KC276T.

55.    Holmes knows of Euro-Pro's existing and prospective contractual
relations and has intentionally and wrongfully interfered with them.

56.    Specifically, upon information and belief, Holmes has asserted falsely to
others, including Euro-Pro's existing and prospective customers, that Euro-Pro's products
infringe one or more claims of the '483, '855 and '921 patents—at a time when Holmes
knew or should have known that such statements were false and with the intention that
such statements would cause harm to Euro-Pro's existing and prospective contractual
relations.

57.    Upon information and belief, such acts of tortious interference have been
committed in this and other judicial districts and will continue unless enjoined by the
Court.

58.    Euro-Pro has suffered and will continue to suffer damages and irreparable
injury as a result of Holmes' tortious interference.

*Fifth Counterclaim—Unfair Competition*

59.     The allegations set forth above are incorporated herein by reference.

60.     Holmes is liable to Euro-Pro for unfair competition.

61.     Specifically, upon information and belief, Holmes has asserted falsely to others, including Euro-Pro's existing and prospective customers, that Euro-Pro's products infringe one or more claims of the '483, '855 and '921 patents—at a time when Holmes knew or should have known that such statements were false.

62.     Upon information and belief, such acts of unfair competition have been committed in this and other judicial districts and will continue unless enjoined by the Court.

63.     Euro-Pro has suffered and will continue to suffer damages and irreparable injury as a result of Holmes's unfair competition.

*Prayer for Relief*

WHEREFORE, Euro-Pro requests that judgment be entered in its favor and against Holmes, and that Euro-Pro be granted the following relief:

A.     That a judgment be entered declaring that Euro-Pro has not directly infringed, contributorily infringed, or induced the infringement of the '483, '855 and '921 patents;

B.     That a judgment be entered declaring that the '483, '855 and '921 patents are invalid;

C.     That a judgment be entered declaring that the '855 and '921 patents are unenforceable;

D.    That a judgment be entered declaring that Holmes has intentionally interfered with Euro-Pro's existing and prospective contractual relations;

E.    That a judgment be entered declaring that Holmes is liable to Euro-Pro for unfair competition;

F.    That a judgment be entered preliminarily and permanently enjoining Holmes, its officers, subsidiaries, parents, agents, servants, employees, attorneys, and all persons in active concert with Holmes, from asserting or otherwise seeking to enforce the '483, '855 and '921 patents against Euro-Pro or anyone making, using, importing, selling, or offering for sale products manufactured and/or sold by Euro-Pro;

G.    That a judgment be entered preliminarily and permanently enjoining Holmes, its officers, subsidiaries, parents, agents, servants, employees, attorneys, and all persons in active concert with Holmes, from any further interference with Euro-Pro's existing and prospective contractual relations;

H.    That Holmes's amended complaint be dismissed with prejudice and that Holmes take nothing by its amended complaint;

I.    That Euro-Pro be awarded compensatory damages for any portion of the injury caused by Holmes that is compensable through the payment of money;

J.    That Euro-Pro's counterclaims be declared exceptional under 35 U.S.C. § 285 and that Euro-Pro be awarded its costs of suit, including reasonable attorney's fees and costs incurred in this action; and

K.    That Euro-Pro be awarded such other and further relief as the Court may deem appropriate.

Dated:  May 27, 2005

EURO-PRO OPERATING, LLC,

By its attorneys,


 /s/ Michelle Chassereau Jackson
Daniel J. Gleason (BBO #194900)
Ronald E. Cahill (BBO# 638200)
Michelle Chassereau Jackson (BBO #654825)
NUTTER MCCLENNEN & FISH LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604
(617) 439-2000


Of Counsel:
VENABLE LLP

Roger A. Colaizzi (pro hac vice)
Jeffrey L. Eichen (pro hac vice)
Michelle M. Marcus (pro hac vice)
575 7th Street, NW
Washington, D.C.  20004
Tel:  (202) 344-4000

1434243.1

DC3/148484

14