IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE HOLMES GROUP, INC., | : | |
| | : | Civil Action No. |
| Plaintiff/Counter-Defendant, | : | 05-CV-10504 (NMG) |
| | : | |
| v. | : | |
| | : | |
| EURO-PRO OPERATING, LLC, | : | |
| | : | |
| Defendant/Counter-Claimant. | : | |

HOLMES' MOTION FOR LEAVE OF COURT
TO FILE A REPLY TO MEMORANDUM IN
OPPOSITION TO HOLMES' MOTION TO DISMISS

Holmes timely filed a Motion to Strike and/or Dismiss Defendant's Third, Fourth and Fifth Counterclaims and Second and Third Affirmative Defenses on June 24, 2005. Euro-Pro filed its Memorandum in Opposition to Holmes' Motion to Dismiss Defendant's Third, Fourth and Fifth Counterclaims and Second and Third Affirmative Defenses on July 18, 2005. Holmes respectfully requests leave of Court to file a reply addressing issues raised in Euro-Pro's Opposition.

- 2 -

## LOCAL RULE 7.1(a)(2) CERTIFICATION

Counsel for Holmes hereby certifies that the filing of this Reply to Memorandum in Opposition to Holmes' Motion to Dismiss was discussed with opposing counsel; however, an agreement on the issues presented could not be reached.

                                        Respectfully submitted,

                                        THE HOLMES GROUP, INC.
                                        By its Attorneys,

Dated: July 29, 2005                    /s/ Charles R. Hoffmann
                                        Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
                                        CRHDocket@hoffmannbaron.com
                                        Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
                                        GTHDocket@hoffmannbaron.com
                                        HOFFMANN & BARON, LLP
                                        6900 Jericho Turnpike
                                        Syosset, New York  11791-4407
                                        Telephone:  (516) 822-3550
                                        Facsimile:  (516) 822-3582

                                        and

                                        Nicholas J. Nesgos (BBO No. 553177)
                                        nnesgos@pbl.com
                                        Jennifer Finger (BBO No. 641830)
                                        jfinger@pbl.com
                                        Joseph W. Corrigan (BBO No. 647393)
                                        jcorrigan@pbl.com
                                        Posternak Blankstein & Lund LLP
                                        Prudential Tower, 800 Boylston Street
                                        Boston, Massachusetts  02199-8004
                                        Telephone:  (617) 973-6100
                                        Facsimile:  (617) 367-2315

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE HOLMES GROUP, INC., | : | |
| | : | Civil Action No. |
| Plaintiff/Counter-Defendant, | : | 05-CV-10504 (NMG) |
| | : | |
| v. | : | |
| | : | |
| EURO-PRO OPERATING, LLC, | : | |
| | : | |
| Defendant/Counter-Claimant. | : | |

**REPLY TO MEMORANDUM IN
OPPOSITION TO HOLMES' MOTION TO DISMISS**

**I.      INTRODUCTION**

Like its pleading, Euro-Pro's opposition to Holmes motion to dismiss improperly asserted counterclaims and affirmative defenses is fundamentally flawed. In its opposition, Euro-Pro presents alleged new facts in the form of a Statement of Facts and Declarations of Stanley Rosenzweig and Jeffrey L. Eichen. However, as acknowledged by Euro-Pro, the outcome of Holmes' motion must be based solely upon the adequacy of Euro-Pro's pleading. *Young v. Lepone,* 305 F.3d 1, 10-11 (1st Cir. 2002) ("The fate of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the [plaintiff's] complaint"). Accordingly, any "facts" not presented in the pleading at issue are completely irrelevant.

Amongst all the new "facts" presented by Euro-Pro, conspicuously absent is the identification of the alleged material prior art known only to Euro-Pro. Despite alleging that the prior art would invalidate the Holmes patents-in-suit, Euro-Pro inexplicably continues to refuse to identify the alleged prior art. In view of this secret prior art known only to Euro-Pro, neither Holmes nor the Court can determine whether such prior art actually exists, is material, or is merely cumulative of prior art already considered by the U.S. Patent Office ("PTO"). Moreover, Holmes cannot adequately respond to the pleading since it is unaware of the alleged prior art, nor can Holmes or the Court determine whether Euro-Pro has stated a claim upon which relief can be granted. Specifically, if the alleged secret prior art is not material to the patentability of the claims at issue, there can be no inequitable conduct by its non-disclosure. Accordingly, Holmes' motion to strike and/or dismiss Euro-Pro's counterclaim directed to inequitable conduct should be granted.

With respect to Euro-Pro's counterclaims for tortious interference and unfair competition, the pleading is glaringly inadequate in stating a claim upon which relief could be granted, i.e., no third party and no specific statements made to such unidentified third parties have been plead. Furthermore, even if such statements were made and identified, Holmes was protected under the First Amendment and the *Noerr-Pennington* doctrine to make such statements. Euro-Pro's only response to Holmes' motion is misplaced reliance on a Tenth Circuit decision.

## II.    EURO-PRO HAS NOT PROPERLY PLEAD INEQUITABLE CONDUCT

Euro-Pro argues that pleading "with particularity" does not mean that the pleading must contain an exhaustive description of every piece of evidence and testimony to be raised at trial. "The purpose of the particularity requirement is simply to give the opposing party sufficient notice of the inequitable conduct claim to prepare a meaningful response and to demonstrate to

the Court that the allegation is not frivolous." (Euro-Pro Opp. at 7). This is precisely why, by failing to even identify the alleged prior art, Euro-Pro's pleading is inadequate. Firstly, Holmes is not requesting every piece of evidence or testimony to support the claim. Holmes is merely stating that without identification of the alleged prior art, no consideration of its materiality can be made by either Holmes or the Court to determine if the claim has merit. Without this basic information, Holmes has not been provided proper notice and cannot adequately respond to the allegations. While the pleading requirements may be minimal, they are not tantamount to nonexistent requirements. The threshold may be low, but it is real - and it is the pleader's burden to take the step which brings the case safely into the next phase of the litigation. "The Court need not conjure up unplead allegations or contrive elaborately arcane scripts in order to carry the blushing bride through the portal." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1998). Thus, based upon its own understanding of the pleading requirements for inequitable conduct, Euro-Pro's pleading clearly fails to meet its burden.

Euro-Pro further contends that its claim is based upon at least two intentionally false statements made in Information Disclosure Statements submitted to the PTO. However, a careful reading of the facts presented by Euro-Pro and the alleged false statements clearly shows that the statements were in fact true. Euro-Pro emphatically states that the alleged prior art was never provided to Holmes. The statements at issue state: "Applicants are not aware of any other references to be identified at this time." (Euro-Pro Opp. at 8). By its own admission, Euro-Pro acknowledges that Holmes was not aware of any other references it could identify since Euro-Pro had not disclosed anything to Holmes.

Additionally, Euro-Pro repeatedly states in both its pleading and opposition memorandum that Holmes refused Euro-Pro's offer to disclose the alleged prior art. Based upon

the Rosenzweig Declaration, Holmes never refused the offer.  Its own evidence in the form of the Rosenzweig Declaration demonstrates that Holmes never refused the offer.  If Euro-Pro had information it believed to be material, it should have disclosed it to Holmes.  There was no reason to wait for Holmes to ask for it.  Holmes has asked and Euro-Pro continues to refuse to respond.  This circumstance is puzzling at best, since it eventually must be disclosed and identification now could result in an early resolution of the case.  If the prior art is as significant as Euro-Pro contends, Holmes would have considered its effect on the patents-in-suit prior to filing the litigation.

Lastly, Euro-Pro's "theory" that inequitable conduct can arise from unsupported third party statements regarding alleged prior art is not justified by any case law.  Euro-Pro relies on *FMC Corp. v. Hennessy Indus., Inc.*, 835 F.2d 521 (Fed. Cir. 1987) and *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370 (Fed. Cir. 2001).  However, each of these cases is highly distinguishable.  In each instance, the alleged information which was not further investigated was within the possession of the patent applicant, not a competitor accused of infringement.  In *FMC Corp.*, the Federal Circuit upheld the District Court decision holding that the applicant for a patent did not breach his duty to disclose by not conducting a more detailed inquiry into potential prior art and prior sale.  *FMC Corp.* 836 F.2d at 526.  In fact, the same footnote cited by Euro-Pro also states that "[a]s a general rule, there is no duty to conduct a prior art search, and thus there is no duty to disclose art of which an applicant could have been aware.  *American Hoist & Derrick Co. v. Sowa & Sons,* 725 F.2d 1350, 1362 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 821 (1984)."  *FMC Corp.*, 836 F.2d at 562, footnote 6.  Accordingly, Euro-Pro's reliance on this case is misplaced.

Likewise, in *Brasseler*, the information at issue, a prior sale around one year before the filing date, was communicated by the patent applicant to its counsel, but counsel never investigated to confirm the statutory bar date for filing the application. Thus, the information was in the possession of the patent applicant and counsel for the applicant was found to have acted with deceptive intent in not conducting a proper investigation into matters known to potentially affect the validity of the patent. *Brasseler*, 267 F.3d at 1382-83. This is clearly at odds with facts presented by Euro-Pro. The alleged material prior art was not in the possession of Holmes and Holmes had no duty to inquire as to unsupported statements made by an accused infringer. Accordingly, even if Euro-Pro's counterclaim for inequitable conduct met the burden of pleading with particularity as required by Rule 9(b), which it clearly does not, Euro-Pro has not stated a claim of inequitable conduct under the law.

### III.     EURO-PRO'S FOURTH AND FIFTH COUNTERCLAIMS AND THIRD AFFIRMATIVE DEFENSE SHOULD BE DISMISSED

Euro-Pro completely fails to address the inadequacy of its pleading with respect to its counterclaims for tortious interference and unfair competition. In its motion, Holmes specifically noted that Euro-Pro's pleading failed to provide any facts upon which its claim could be supported. Euro-Pro has failed to identify the alleged third party to whom the alleged statements were made, how the patents were unenforceable and/or not infringed and how Holmes knew its statements were false. The Fourth and Fifth Counterclaims are merely a conclusory allegation that fails to meet the notice requirement of a proper pleading. Accordingly, notwithstanding Holmes right to make such statements, Euro-Pro has not provided any response to the fact that its pleading is insufficient as a matter of law.

Furthermore, Euro-Pro's reliance on Tenth Circuit law to avoid the *Noerr-Pennington* immunity doctrine is misplaced. The majority of circuits have extended *Noerr-Pennington* immunity to pre-litigation threats. *See e.g., Direct TV, Inc. v. Lewis,* 2005 WL 1006030 (W.D.N.Y.), *6 (stating that Court is aware of the 10th Circuit decision but choose to hold that *Noerr-Pennington* immunity has been recognized by the Second Circuit to extend to cases not involving anti-trust litigation). Thus, the Tenth Circuit decision relied on by Euro-Pro is clearly in the minority and should not be relied on in this instance. Moreover, in the context of patent cases, the Tenth Circuit decision clearly leads to mischief, encouraging the filing of lawsuits and prohibiting communicating allegations of infringement for fear of claims of unfair competition and the like. *See Cartoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 93-94 (10th Cir. 2000), (Judges Lucero, Brorby and Briscoe dissenting). ("there is no sound basis for the conclusion that a compliant be afforded immunity while a "cease-and-desist" letter will not, when both documents contain identical allegations. The majority's ruling encourages, nay demands, more litigation; it requires intellectual property owners to bypass the post office on the way to the court house and avoid the letter carrier in a rush to get to the process server").

Lastly Euro-Pro alleges that its pleading is sufficient to fall within the "sham" exception to the *Noerr-Pennington* doctrine. To the contrary, Euro-Pro has not plead any specific facts at all, let alone facts sufficient to support a "sham" litigation exception.

## IV.     CONCLUSION

For the foregoing reasons set forth above and in Holmes Motion to Dismiss Euro-Pro's Third, Fourth and Fifth Counterclaims and Second and Third Affirmative Defenses, Holmes motion to dismiss and/or strike should be granted.

                                                Respectfully submitted,

                                                THE HOLMES GROUP, INC.
                                                By its Attorneys,

Dated:  July 29, 2005                       /s/ Charles R. Hoffmann
                                                Charles R. Hoffmann, Esq. (*Pro Hac Vice*)
                                                CRHDocket@hoffmannbaron.com
                                                Glenn T. Henneberger, Esq. (*Pro Hac Vice*)
                                                GTHDocket@hoffmannbaron.com
                                                Hoffmann & Baron, LLP
                                                6900 Jericho Turnpike
                                                Syosset, New York  11791-4407
                                                Telephone:  (516) 822-3550
                                                Facsimile:  (516) 822-3582
                                                and
                                                Nicholas J. Nesgos (BBO No. 553177)
                                                nnesgos@pbl.com
                                                Jennifer Finger (BBO No. 641830)
                                                jfinger@pbl.com
                                                Joseph W. Corrigan (BBO No. 647393)
                                                jcorrigan@pbl.com
                                                Posternak Blankstein & Lund LLP
                                                Prudential Tower, 800 Boylston Street
                                                Boston, Massachusetts  02199-8004
                                                Telephone:  (617) 973-6100
                                                Facsimile:  (617) 367-2315