United States District Court
District of Massachusetts

| | |
|---|---|
| THE HOLMES GROUP, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 05-10504-NMG |
| ) | |
| EURO-PRO OPERATING, LLC, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM & ORDER

GORTON, J.

Currently pending before the Court is a motion by the plaintiff, The Holmes Group, Inc. ("Holmes"), to dismiss and/or strike various counterclaims and affirmative defenses asserted by the defendant, Euro-Pro Operating, LLC ("Euro-Pro").

I. **Background**

Holmes claims that Euro-Pro infringed three of its patents for a "Programmable Slow-Cooker Appliance" by importing, distributing, marketing and selling appliances covered by those patents.[1] Holmes states that its former Chief Operating Officer, Stanley Rosenzweig ("Rosenzweig"), is a principal owner in Euro-Pro and that at least six other former employees have also been

---

[1] The specific patents alleged to have been infringed are Nos. 6,573,483 B1 ("the '483 patent"), 6,740,855 B1 ("the '855 patent") and 6,872,921 B1 ("the '921 patent").

-1-

hired by the defendant. Rosenzweig and at least one other former employee are alleged to possess proprietary information relating to the Holmes patents.

Euro-Pro denies any infringement and alleges that the patents at issue are either invalid, unenforceable or both. It has asserted six affirmative defenses including the following: 1) Holmes has failed to state a claim upon which relief can be granted, 2) the instant patents are unenforceable and 3) Holmes' claims are barred by waiver, release, estoppel, license, laches and the statute of limitations. Euro-Pro has also counterclaimed against Holmes for 1) declaratory judgments that the patents at issue are invalid, unenforceable and have not been infringed, 2) intentional interference with contractual relations and 3) unfair competition.

## II. Motion to Dismiss Counterclaims and Strike Affirmative Defenses

Holmes has filed a motion to dismiss three of the defendant's counterclaims and to strike two of its affirmative defenses. In particular, Holmes contends that Euro-Pro's Third Counterclaim and Second Affirmative Defense are in the nature of fraud claims with respect to which Euro-Pro has failed to plead with particularity pursuant to Fed. R. Civ. P. 9(b). Holmes further asserts that the subject counterclaim and affirmative defense fail under Fed. R. Civ. P. 12(b)(6). With respect to Euro-Pro's Fourth and Fifth Counterclaims and Third Affirmative

-2-

Defense, Holmes contends that it is immunized from liability by operation of the Noerr-Pennington doctrine. Euro-Pro disputes all of the contentions of Holmes and suggests that, to the extent its pleading is insufficient, the Court should permit amendment.

**A.   Legal Standard**

A court may not dismiss a counterclaim under Fed. R. Civ. P. 12(b)(6) "unless it appears, beyond doubt, that the [counterclaimant] can prove no set of facts in support of his claim which would entitle him to relief." Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint (or counterclaim) and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000). Although a court must accept all factual allegations in support of a counterclaim as true and draw all reasonable inferences in the counterclaimant's favor, Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000), it need not credit bald assertions or unsupportable conclusions, Banco Santander de Puerto Rico v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.), 324 F.3d 12, 15 (1st Cir. 2003).

Under Fed. R. Civ. P. 12(f), an affirmative defense may be stricken if it is legally insufficient, redundant, immaterial, impertinent or scandalous. Rule 12(f) motions to strike are generally disfavored and will not be allowed unless the alleged deficiency is clearly apparent. See SEC v. Nothern, 400 F. Supp. 2d 362, 364 (D. Mass. 2005) (citations omitted).

### B.  Third Counterclaim; Second Affirmative Defense

Euro-Pro asserts in its Third Counterclaim and Second Affirmative Defense that the '855 and '921 patents are unenforceable because Holmes obtained them through inequitable conduct, namely by making false representations to the United States Patent and Trademark Office ("PTO"). More specifically, Euro-Pro alleges that Holmes purposely withheld information about material prior art references in information disclosure filings that it made to the PTO in November and December, 2003, and in May and October, 2004.

Fed. R. Civ. P. 9(b) provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity". Euro-Pro agrees with Holmes that Rule 9(b) applies to its Third Counterclaim and Second Affirmative Defense but maintains that those averments have been pled with sufficient particularity.

The First Circuit Court of Appeals has interpreted Rule 9(b) to require "specification of the time, place, and content of an

alleged false representation". Johnson v. Brown & Williamson Tobacco Corp., 122 F. Supp. 2d 194, 207 (D. Mass. 2000) (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)) (internal quotation marks omitted). Here, Holmes contends that Euro-Pro has failed to plead the content of the allegedly false misrepresentation because it does not identify any particular prior art that Holmes allegedly failed to disclose to the PTO. Euro-Pro responds that it adequately pled the content of the misrepresentation, i.e., Holmes' statement to the PTO that it was "not aware of any other [material prior art] references to be identified at this time".

After reviewing the pleadings and relevant case law, the Court is persuaded by Euro-Pro and concludes, therefore, that its Third Counterclaim and Second Affirmative Defense have been pled with sufficient particularity to withstand a challenge under Rule 9(b).

In addition, the Court finds that the Third Counterclaim adequately states a claim upon which relief may be granted. To state a claim of patent unenforceability on the grounds of inequitable conduct, the pleading party must allege facts showing that 1) information material to patentability was misrepresented or withheld and 2) the person who misrepresented or withheld those facts did so with the intention of deceiving or misleading the PTO. See Bruno Indep. Living Aids, Inc. v. Acorn Mobility

Servs., Ltd., 394 F.3d 1348, 1351 (Fed. Cir. 2005); Upjohn Co. v. Mova Pharmaceutical Corp., 225 F.3d 1306, 1312 (Fed. Cir. 2000). Materiality and intent must each be proved by clear and convincing evidence. Upjohn, 225 F.3d at 1312.

In this case, Euro-Pro alleges that it notified Holmes of the existence of prior art references but that Holmes intentionally refused to acknowledge that information in order to profess ignorance of such references in its PTO filings. Holmes contends that because it never actually saw any prior art references, it could not have knowingly misrepresented facts to the PTO, to which Euro-Pro responds that Holmes cannot elude the knowledge requirement of inequitable misconduct through willful blindness. Although Euro-Pro's counterclaim for inequitable conduct may ultimately fail at a later stage in this litigation, the allegations in support of that counterclaim are sufficient to withstand the pending motion to dismiss.

### C. Fourth and Fifth Counterclaims; Third Affirmative Defense

Euro-Pro's Fourth and Fifth Counterclaims allege intentional interference with contractual relations and unfair competition. Both of those counterclaims as well as its Third Affirmative Defense are based on the allegation that Holmes falsely asserted to existing and prospective customers of Euro-Pro that the latter's products infringed upon patents owned by Holmes. Holmes argues that the foregoing counterclaims and affirmative defense

must be dismissed/stricken on the grounds that the <u>Noerr-Pennington</u> doctrine precludes liability based upon the alleged misconduct. Euro-Pro replies that <u>Noerr-Pennington</u> is inapplicable on these facts.

The <u>Noerr-Pennington</u> doctrine is so named after <u>Eastern Railroad Presidents Conference</u> v. <u>Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961), and <u>United Mine Workers of America</u> v. <u>Pennington</u>, 381 U.S. 657 (1965), in which the United States Supreme Court held that "concerted effort[s] to influence public officials regardless of intent of purpose" do not violate the antitrust laws, <u>Pennington</u>, 381 U.S. at 670. <u>See also</u> <u>Cal. Motor Transp. Co.</u> v. <u>Trucking Unlimited</u>, 404 U.S. 508, 510 (1972) (extending the principle of <u>Noerr-Pennington</u> to "the approach of citizens ... to administrative agencies ... and to courts"). The doctrine derives from an interpretation of the Sherman Act and the First Amendment right to petition the government. <u>Id.</u> Where the ostensibly immunized activity is merely a "sham", however, the doctrine provides no protection. <u>See</u> <u>id.</u> at 511-16. Because the <u>Noerr-Pennington</u> doctrine derives, at least in part, from the First Amendment, courts have extended its operation to claims outside of the antitrust context. <u>See, e.g.</u>, <u>BE & K Constr. Co.</u> v. <u>NLRB</u>, 536 U.S. 516 (2002) (right to petition protects genuine Labor-Management Relations Act claims); <u>IGEN Int'l Inc.</u> v. <u>Roche Diagnostics GMBH</u>, 335 F.3d 303, 310 (4th Cir.

2003) (asserting that the doctrine has "universally been applied to business torts"); Missouri v. Nat'l Org. for Women, Inc., 620 F.2d 1301 (8th Cir. 1980) (no liability for boycotting activities under state tort law claim); Sierra Club v. Butz, 349 F. Supp. 934 (N.D. Cal. 1972) (no liability for interference with advantageous relationship where the alleged interference consisted of petitioning a governmental body). See also NAACP v. Claiborne Hardware Co., 458 U.S. 886, 938 (1982) (discussing Noerr in support of its holding that the First Amendment precluded liability for non-violent, political petitioning activity).

Similarly, because the pursuit of litigation is encompassed by the doctrine, a number of courts have concluded that certain litigation-related conduct is also entitled to protection. See, e.g., Primetime 24 Joint Venture v. Nat'l Broad. Co. Inc., 219 F.3d 92, 100 (2d Cir. 2000) ("Courts have extended Noerr-Pennington to encompass concerted efforts incident to litigation, such as pre-litigation 'threat letters'.") (citing cases); CTC Commc'ns Corp. v. Bell Atl. Corp., 77 F. Supp. 2d 124, 132 (D. Me. 1999) ("Acts that are 'reasonably and normally attendant upon protected litigation' are entitled to immunity to the same extent as the related litigation.") (quoting Matsushita Elecs. Corp. v. Loral Corp., 974 F. Supp., 345, 359 (S.D.N.Y. 1997)) (quoting and citing additional cases). But see Cardtoons, L.C. v. Major

League Baseball Players Ass'n, 208 F.3d 885 (10th Cir. 2000) (holding that Noerr-Pennington does not immunize non-antitrust claims based upon pre-litigation threats between private parties because those threats do not involve the right to petition).

The First Circuit Court of Appeals has not considered extensions of Noerr-Pennington to litigation-related conduct not involving antitrust claims. Holmes requests, therefore, that this Court follow those courts that have provided Noerr-Pennington immunity from state tort law claims based upon litigation-related statements. Euro-Pro, on the other hand, urges the Court to follow Cardtoons, supra. It contends that the Noerr-Pennington doctrine is narrower when applied to non-antitrust claims because its sole basis in such context is the petition clause of the First Amendment. Because pre-litigation statements, according to Euro-Pro, do not implicate the petition clause, Noerr-Pennington provides no immunity for claims based on such statements. In the alternative, Euro-Pro contends that the activities of Holmes fall within the "sham" exception to Noerr-Pennington.

The instant dispute involves unanticipated nuances but the Court is persuaded by Euro-Pro's argument. Although Holmes cites numerous cases in support of its contentions, those cases are generally distinguishable from the instant action in that they involve antitrust claims or other forms of concerted activity.

For example, the claims addressed in <u>CVD, Inc.</u> v. <u>Raytheon Co.</u>, 769 F.2d 842, 850-51 (1st Cir. 1985), <u>Glass Equipment Development, Inc.</u> v. <u>Besten, Inc.</u>, 174 F.3d 1337, 1343-44 (Fed. Cir. 1999), and <u>McGuire Oil Co.</u> v. <u>Mapco, Inc.</u>, 958 F.2d 1552, 1558-61 (11th Cir. 1992), are all grounded in antitrust law. <u>Primetime</u>, <u>supra</u>, <u>McGuire</u>, <u>supra</u>, and <u>Coastal States Marketing, Inc.</u> v. <u>Hunt</u>, 694 F.2d 1358, 1367 (5th Cir. 1983), extend <u>Noerr-Pennington</u> to pre-litigation threats but describe the doctrine as applying to "concerted" or "joint" activity, thereby adverting to the associational basis for the doctrine.

The position of Holmes in this matter rests at the fringes of the case law upon which it bases its argument. Euro-Pro's counterclaims for intentional interference with contractual relations and unfair competition do not allege antitrust violations nor, indeed, any form of concerted action. Moreover, the alleged misconduct, i.e., that Holmes made false statements to customers of Euro-Pro, simply does not constitute a petition to the government to the same extent as activities such as boycotting or the actual initiation of a lawsuit. Consequently, the Court will not extend the principles of <u>Noerr-Pennington</u> to the counterclaims and affirmative defense at issue.

**ORDER**

In accordance with the foregoing, Plaintiff's Motion to

Strike and/or Dismiss Defendant's Third and Fourth and Fifth Counterclaims and Second and Third Affirmative Defenses (Docket No. 12) is **DENIED**.

**So ordered.**

_/s/ Nathaniel M. Gorton_
Nathaniel M. Gorton
United States District Judge

Dated: February 23, 2006